Filed 12/15/21  Tanriverdi v. City of Ontario CA4/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| VERDI TANRIVERDI, | |
| Plaintiff and Appellant, | E075198 |
| v. | (Super. Ct. No. CIVDS1717680) |
| CITY OF ONTARIO, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan F. Foster, Judge.  Affirmed.

Verdi Tanriverdi, in pro. pro., Plaintiff and Appellant.

Best Best & Krieger, Jessica K. Lomakin, Allen Ho and Holland Stewart, for Defendant and Respondent.

1

## I.

## INTRODUCTION

Verdi Tanriverdi owns 31 adjacent parcels in the City of Ontario. After discovering that each parcel had trash and overgrown weeds, the City imposed $3,410 in abatement fees ($110 for each parcel), but reduced the fees to $1,500 after Tanriverdi contested them. Tanriverdi then sued the City for various claims, which generally asserted the fees are unlawful and that the City violated his federal civil rights in imposing them. The trial court entered judgment in the City's favor, and Tanriverdi appeals. We affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Each year, the City inspects vacant parcels for nuisances. In May 2016, the City inspected 31 parcels that Tanriverdi owns and found that they had nuisance conditions, including trash and overgrown weeds. The City issued Tanriverdi a Notice of Violation (NOV) for each parcel on May 4, 2016. Each NOV carried a $110 fee for Tanriverdi's failure to abate the nuisances, so he was assessed $3,410 in abatement fees. The NOVs informed Tanriverdi that "[i]f you disagree with this [NOV], or wish to present extraordinary circumstances, you may request a hearing. This hearing must be requested within ten (10) days of the date of this [NOV] and must be requested in writing."

Tanriverdi did not request a hearing. Instead, about three months later, Tanriverdi filed a "Claim for Damages to Person or Property" with the City under the Government

2

Claims Act (Gov. Code, §§ 900 et seq.; GCA) in which he alleged the City damaged his parcels and impermissibly imposed the abatement fees. Tanriverdi also disputed whether the City "actually inspected each property" before issuing the NOAs.

The City eventually reduced the total amount Tanriverdi owed for the abatement costs to $1,500. Tanriverdi never paid the fees.

Instead, Tanriverdi sued the City in September 2017. After the City successfully demurred to Tanriverdi's complaint, he filed a First Amended Complaint (FAC) asserting various claims under state and federal law. The City again demurred, and the trial court sustained the demurrer in part and overruled it in part.

The trial court described the FAC as "poorly draft[ed]," "extremely confusing," and "difficult to ascertain a cognizable cause of action." The court noted that although the FAC's caption identifies only six causes of action, the FAC alleges 11 causes of action. "As an example of the confusing nature of the [FAC]," the trial court observed that the sixth cause of action alleged "no cognizable cause of action," which was the case for "essentially . . . every purported cause of action." The trial court thus found that "[t]o the extent [Tanriverdi] seeks to challenge the fees assessment, his claim is barred" for his failure to exhaust his administrative remedies. The court therefore sustained the City's demurrer "brought on the ground of failure to exhaust administrative remedies, without leave to amend." The trial court also sustained the demurrer because Tanriverdi violated the GCA, but allowed him leave to amend. The trial court found, however, that Tanriverdi's federal civil rights claims "survive[d]" the City's demurrer because the City

3

did not address them in its demurrer and Tanriverdi did not have to exhaust his administrative remedies before bringing the claims.

Tanriverdi then filed his operative Second Amended Complaint (SAC) alleging seven causes of action. The thrust of Tanriverdi's claims is that the City unlawfully assessed the "arbitrary, tyrannical and despotic" abatement fees, which he claims violated his civil rights and constitute unlawful property tax increases.

In his first cause of action, Tanriverdi alleges the City violated Title 18 United States Code section 242, and Title 42 United States Code sections 1983, 1985, and 1986. The second cause of action alleges the City assessed the abatement fees in violation of the Ontario Municipal Code (OMC). The third cause of action likewise asserts the fees violate various provisions of the Government Code, the OMC, and the California Constitution (Propositions 13 and 218). The SAC's fourth cause of action alleges the City violated Tanriverdi's rights under the Fourth, Eighth, and Fourteenth Amendments. In the fifth cause of action, Tanriverdi asserts the City violated Title 18 United States Code sections 1951, 1961, and 1962, provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO). Similarly, the sixth cause of action for "abuse of power" alleges that the City violated Title 42 United States Code section 1986 and the OMC. Finally, the seventh cause of action alleges the City discriminated against Tanriverdi in violation of Title 42 United States Code section 2000 et seq. (Title VII) because he is a property owner.

The City demurred to the SAC. The trial court sustained the demurrer in part and overruled it in part, although the court did not explain its reasoning. The trial court sustained the demurrer without leave to amend as to the SAC's second, third, fifth, sixth, and seventh causes of action. The trial court also sustained the demurrer without leave to amend as to most of the SAC's first and fourth causes of action. The trial court found, however, that both causes of action stated cognizable claims for violation of the Fourth and Eighth Amendments to the federal Constitution. The trial court later granted the City's motion for summary judgment on those claims, reasoning that the City did not search or seize Tanriverdi's property in violation of the Fourth Amendment and the abatement fees were not excessive in violation of the Eighth Amendment. The trial court entered judgment for the City, and Tanriverdi timely appealed.

## III.

## DISCUSSION

Tanriverdi argues the trial court erred by sustaining the City's demurrers to the FAC and SAC without leave to amend and granting its motion for summary judgment. We disagree.[1]

---

[1] We note that we have had considerable difficulty understanding Tanriverdi's filings. We agree with the trial court that the FAC is "extremely confusing" and it is "difficult to ascertain" what its claims are. The SAC and Tanriverdi's appellate briefs are also unclear and difficult to follow.

A. *The Trial Court Properly Sustained the City's Demurrers*

1. *Standard of Review*

"'A trial court's order sustaining a demurrer without leave to amend is reviewable for abuse of discretion "even though no request to amend [the] pleading was made." [Citation.] While it is the plaintiff's burden to show "that the trial court abused its discretion" and "show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading" [citation], a plaintiff can make "such a showing . . . for the first time to the reviewing court" [citation].'" (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) Thus, "[t]o meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.* (1994) 4 Cal.App.4th 857, 890.)

We "liberally construe[]" a complaint's allegations. (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146.) "'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several

grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citation.]" (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Shifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

2. *Forfeited Claims*

In his opening brief, Tanriverdi does not mention his Fourteenth Amendment claim in his fourth cause of action, his fifth cause of action for the City's alleged violations of RICO, his sixth cause of action for "abuse of power," or his seventh cause of action for discrimination. He therefore forfeited any argument that the trial court erroneously sustained the City's demurrer to these claims, so we need not address them. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296 fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned"].)

7

### 3. *Tanriverdi did not meet the GCA's six-month statute of limitations*

Tanriverdi does not dispute that he had to comply with the GCA. We conclude that Tanriverdi failed to meet the GCA's statute of limitations. As a result, his second and third claims were untimely filed, so the trial court properly sustained the City's demurrer to those claims without leave to amend.

In general, the GCA applies to claims against a public entity for damages or monetary relief. (See *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1493; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.) Unless a specific exception applies, "[a] suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in '"tort, contract or some other theory."'" (*Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 778.) Thus, the GCA does not apply to claims for nonpecuniary actions, "such as those seeking injunctive, specific or declaratory relief." (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1081.)

Tanriverdi seeks only monetary relief for his claims, so the GCA applies to his claims. (*Hart v. County of Alameda*, *supra* 76 Cal.App.4th at p. 778.) This means that Tanriverdi's claims are subject to the GCA's statute of limitations unless they are exempt from the GCA's requirements.

"Suits against a public entity are governed by the specific statute of limitations provided in the Government Code, rather than the statute of limitations which applies to private defendants." (*Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 244.)

8

With some exceptions not applicable here, the GCA provides that a lawsuit against a public entity must be filed no later than six months after the entity rejects the plaintiff's GCA claim. (Gov. Code, §§ 911.2, subd. (a); 945.6, subd. (a)(1); *Roberts v. County of Los Angeles* (2009) 175 Cal.App.4th 474, 478-479.)

Documents that Tanriverdi attached to the SAC to prove his compliance with the GCA show that he did not comply with the GCA's six-month statute of limitations. (See *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [courts may consider documents attached to complaint in ruling on demurrer].) The City rejected Tanriverdi's claim on August 15, 2016, meaning that he had until February 2017 to file suit. (See *Roberts v. County of Los Angeles*, *supra*, 175 Cal.App.4th at pp. 478-479.) He did not do so until September 2017, so he did not meet the GCA's six-month statute of limitations.

"Exceptions to the filing requirement not specifically enumerated in the Government Claims Act have occasionally been allowed, but only where the claim is based on a statute or statutory scheme that includes a functionally equivalent claim process." (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 764.) For instance, Tanriverdi's federal civil claims are exempt. (*Ibid.*) His second and third causes of action, which are brought under the OMC and California law and seek monetary damages, are not exempt from the GCA's six-month statute of limitations. (See *ibid.*)

In short, Tanrvideri's second and third causes of action are barred by the GCA's six-month statute of limitations. The trial court therefore properly sustained the City's demurrer without leave to amend as to those claims.

B. *The Trial Court Properly Granted the City's Motion for Summary Judgment on Tanriverdi's Federal Civil Rights Claims*

Tanriverdi alleged that the City unlawfully searched and seized his property in violation of the Fourth Amendment by issuing the NOAs and resulting abatement fees. He also asserted that the abatement fees constituted an excessive fine under the Eighth Amendment. We conclude the trial court did not err in granting the City's summary judgment motion on Tanriverdi's Fourth and Eighth Amendment claims in his first and fourth causes of action.

1. *Standard of Review*

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not

contradicted by the opposing party's evidence.  (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.)  Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment."  (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

### 2.  *The Trial Court Properly Granted Summary Judgment*

The Fourth Amendment prohibits the government from conducting an unreasonable "search" or "seizure."  (U.S. const., amend IV.)  When inspecting Tanriverdi's property, the City viewed all of his property from publicly accessible property and remained on public property at all times.  As a result, the City did not unreasonably search Tanriverdi's property under the Fourth Amendment.  (See *United States v. Perea-Rey* (9th Cir. 2012) 680 F.3d 1179, 1186 ["[A] warrant is not required to observe readily visible items within the curtilage, and 'officers [need not] shield their eyes when passing by a home on public thoroughfares' [citation]"]; *Florida v. Riley* (1989) 488 U.S. 445, 450 [government officials do not violate the Fourth Amendment by "'observ[ing] what is visible to the naked eye'" because "the home and its curtilage are not necessarily protected from inspection that involves no physical invasion"].)

The City also did not unreasonably seize Tanriverdi's property.  Under the Fourth Amendment, "[a] 'seizure' of property occurs when there is some meaningful

interference with an individual's possessory interests in that property." (*United States v. Jacobsen* (1984) 466 U.S. 109, 113.) A seizure violates the Fourth Amendment only if it is unreasonable. To determine whether a seizure is unreasonable, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." (*United States v. Place* (1983) 462 U.S. 696, 703.)

Even if the City "seized" Tanriverdi's property by issuing the NOVs and abatement fees, it did not do so unreasonably. The City's officials remained on public property at all times and imposed the abatement fees in accordance with the OMC after observing the nuisance conditions on Tanriverdi's parcels. In the NOVs, the City thoroughly explained their decision with supporting documentation, cited the applicable OMC provisions, and outlined Tanriverdi's options for challenging the abatement fees. After Tanriverdi disputed the fees, the City reduced them to $1,500 in the interests of justice. The City's enforcement of its nuisance ordinances was reasonable and thus did not violate the Fourth Amendment. (See *Santana v. City of Tulsa* (10th Cir. 2004) 359 F.3d 1241, 1243 [city did not violate Fourth Amendment by removing nuisance conditions on private property and imposing $3,000 nuisance abatement fee]; *Freeman v. City of Dallas* (5th Cir. 2001) 242 F.3d 642 [city did not violate Fourth Amendment because destruction of privately owned "nuisance structures" was reasonable]; *Samuels v. Meriwether* (8th Cir. 1996) 94 F.3d 1163, 1168 ["[A]n abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that

12

outweigh governmental interests."].)  The trial court therefore properly granted the City summary judgment on Tanriverdi's Fourth Amendment claim.

The trial court also properly granted summary judgment on Tanriverdi's Eighth Amendment claim.  "The Eighth Amendment prohibits the imposition of excessive fines. The word 'fine,' as used in that provision, has been interpreted to be '"a payment to a sovereign as punishment for some offense."'"  (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1040.)  To determine whether a fine is excessive, we ask whether the fine is "grossly disproportional to the gravity of [the] offense."  (*United States v. Bajakajian* (1998) 524 U.S. 321, 334.)  To make that assessment, we consider "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay."  (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.)  Applying these factors, we conclude the abatement fees were not excessive under the Eighth Amendment.

First, Tanriverdi does not and cannot dispute that, as the owner of the parcels, he is liable for their nuisance conditions.

Second, the abatement fees were reasonably related to the harm.  Although Tanriverdi was originally assessed $3,410 in abatement fees, the City reduced the total to $1,500, meaning that Tanriverdi was assessed an abatement fee of about $48.40 for each parcel.  Tanriverdi argues the fees were still grossly disproportionate because the actual cost of abatement, which he paid, was $225.  But the fees were imposed to cover the

13

costs of abatement, including "administrative and investigative costs" associated with assessing the nuisance conditions and imposing the abatement fees. (OMC sec. 6-9.02.) According to the City, the $110 fee "reflects the cost conducting code enforcement and issuing the [NOVs]." Tanriverdi provides no argument or evidence that suggests the reduced fee of $48.40 for each NOV is "grossly disproportionate" to the harm caused by the nuisance conditions on his properties given the administrative costs the City incurred to assess his properties and issue the NOVs.

Third, the City submitted evidence that the fees are not disproportionate to those imposed by comparable provisions. In particular, the City provided evidence showing that the City of Sacramento imposes a penalty of up to $1,500 plus all costs of abatement and a "Fire Declaration Fee" if a property in Sacramento has nuisance weed conditions. Tanriverdi, on the other hand, did not provide any evidence about abatement fees imposed by other municipalities for comparable nuisance conditions.

Fourth and finally, there is no evidence that Tanriverdi cannot pay the $1,500 fine. In fact, he does not argue that he cannot pay it.

Because all four factors we consider to determine whether a fee is excessive under the Eighth Amendment support a finding that the abatement fees the City imposed were proper, we conclude the fees do not violate the Eighth Amendment. The trial court therefore properly granted the City's motion for summary judgment on Tanriverdi's first and fourth causes of action.

14

IV.

DISPOSITION

The judgment is affirmed.  The City may recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.

15